# Devine's Appeal.

A sheriff's sale, subject to a fixed lien, is necessarily subject also to a prior encumbrance.

Northern Liberties *v.* Swain, 1 *Harris* 113, affirmed.

On a sheriff's sale, subject to a mortgage and also to a prior ground-rent, the purchaser takes subject to the arrears of ground-rent due at the time of sale.

It is not in the power of the sheriff, by prescribing his terms of sale, to affect the rights of lien creditors to the proceeds; he is the mere agent of the law in effecting the sale.

. APPEAL from the District Court of *Philadelphia.*

This was an appeal by Mark Devine, from the decree of the District Court, distributing the proceeds of a sheriff's sale of the real estate of Thomas U. Walter.

By deeds, dated the 14th March 1850, George G. Gardiner and others, trustees of Mary Ann Palairet, conveyed to George W. Colladay five several lots of grounds, in the District of Spring Garden, reserving out of each of them a yearly ground-rent of $113.50, with the usual covenants of distress, re-entry, &c.

On the same day, Colladay sold and conveyed the lots to Thomas U. Walter, subject to the ground-rents, and took from him a mort-

[Devine's Appeal.]

gage of $2630.67, on each lot. Walter erected buildings on these lots, and in April and May 1852, whilst yet unfinished, they were levied on and sold by the sheriff, under an execution issued upon a subsequent judgment obtained against Walter by Morgan Hinchmann. Four of these houses were purchased by the appellant.

The following terms and conditions were read by the sheriff at the time of sale :—

"Arrears of ground-rent and taxes, if any, will be paid out of the purchase-money if the bills are presented to the sheriff before he parts with the money, otherwise they will be paid by the purchaser."

The proceeds of sale were paid into court, and an auditor was appointed to report distribution of the fund, before whom a claim was presented for arrears of ground-rent due at the time of sale.

The audit commenced on the 9th June 1852, but was suspended by the pendency of an issue claimed by a mechanics' lien creditor, until the 3d November 1856. In the mean time, the appellant having resold the premises, in order to make a clear title, was compelled to pay the arrears of ground-rent, and to be subrogated to the ground-landlord's claim upon the fund in court.

On the resumption of the auditor's functions, the appellant appeared before him, in support of this claim; which was rejected, on the authority of the case of The Northern Liberties v. Swain, 1 *Harris* 113; and the exceptions taken by the appellant having been dismissed by the District Court, and the auditor's report confirmed, this appeal was taken.

*H. E. Wallace,* for the appellant.—A judicial sale divests all liens which in their nature are capable of being ascertained, and which are not saved by statute: Loomis's Appeal, 10 *Harris* 316. Arrears of ground-rent are a lien; and are, in general, discharged by a sheriff's sale: Bantleon v. Smith, 2 *Binn.* 146; Pancoast's Appeal, 8 *W. & S.* 381; Dougherty's Estate, 9 *W. & S.* 189; Ter Hoven v. Kerns, 2 *Barr* 96; Mather v. McMichael, 1 *Harris* 301. This lien arises from the covenant of re-entry, which is discharged by the sheriff's sale, as to the arrears then due: Bantleon v. Smith, *ut sup.;* Sands v. Smith, 3 *W. & S.* 12; Wills v. Gibson, 7 *Barr* 154; Spangler's Appeal, 12 *Leg. Int.* 351 (*ante* 277–8). The arrears are payable out of the fund; Aulenbaugh v. Umbehauer, 8 *Watts* 48; Custer v. Detterer, 3 *W. & S.* 28; Spring Garden's Appeal, 8 *W. & S.* 444.

The case of the Northern Liberties v. Swain, 1 *Harris* 113, the sole authority for the position assumed by the auditor in this case, should not rule it. There the lien which is supposed by the auditor to have been saved by the existence of the mortgage, it will be seen, by examination of the opinion of BELL, J., was itself expressly saved by the operation of the Act of 1835, in relation to

municipal claims, from discharging the mortgage, and the sale having occurred before (although decided after) the Act of 1845 on the same subject, the lien was not payable out of the proceeds. It is, therefore, no authority on the question here presented.

Every reported case, involving the question of the sheriff's power over the conditions of sale, has presented a different aspect from that now before the court. Here it was a contract with the officer of the court, and binding on the court: Shultz *v.* Diehl, 2 *Penn. R.* 277.

*J. B. Townsend*, for the appellees.—In this case the mortgages are saved by the operation of the Act of 6th April 1830, and it is settled, that when a purchaser at sheriff's sale, takes the property, subject by the law to any particular lien, he takes it subject also to all prior liens.

This rule is recognised without exception or qualification in Mix *v.* Achla, 7 *Watts* 316; Swar's Appeal, 1 *Barr* 92; Lauman's Appeal, 8 *Barr* 473; Northern Liberties *v.* Swain, 1 *Harris* 113.

The opinion of the court was delivered by

STRONG, J.—It is too well settled longer to be doubted, that a sheriff's sale of lands under a *venditioni exponas*, passes to the purchaser only that interest which remained in the debtor after a fixed lien had attached, unless the sale be founded upon a claim superior in right to that of the fixed lien creditor. This was ruled in Mix *v.* Achla, 7 *Watts* 316; in Swar's Appeal, 1 *Barr* 92; in Lauman's Appeal, 8 *Barr* 473; in Northern Liberties *v.* Swain, 1 *Harris* 113; and is recognised in Tower's Appropriation, 9 *W. & S.* 103. The proceeds of sale are substituted not for the whole estate in the land, but for that interest which the purchaser obtains, and for which, alone he pays the purchase-money. The fixed lien remaining upon the lands sold, all antecedent liens must necessarily remain. Were it not so, instead of being paramount to that which continues undisturbed, they would become subordinate to it; and, if the fixed lien were equal to the entire value of the property, the prior liens would be *worthless*. If then the purchase-money be a substitute only for that interest which remains unencumbered in the debtor after the fixed lien has attached, it is obvious that only those creditors can claim it, whose liens are subsequent in date to that of the fixed lien creditor. In the case now before us, Colladay's mortgages remained upon the property, notwithstanding the sale, by virtue of the Act of April 6th 1830. They were prior to all other liens, except the ground-rents. An attempt is, however, made to distinguish between the right of re-entry which, under the grount-rent deeds, constitutes the liens and the unpaid arrears of the rent; and while it is admitted that the ground-rent lien itself is not discharged, it is con

[Devine's Appeal.]

tended that the lien of the arrears is, and consequently that that of the subsequent mortgages is gone. The priority of the lien for arrears is determinable by the date of the ground-rent deed, without regard to the time when they accrued. It is to that deed alone that the subsequent encumbrancer or purchaser can look. It is unnecessary to refer to authorities for a doctrine so familiar. If a judgment be recovered for arrears, the lien on the land is still from the date of the deed. Unpaid arrears have no new lien created by matter *in pais*, by the default of the tenant. They are the shadow of which the original ground-rent reservation is the substance, as much so as interest is of the principal. The intended security given to a first mortgagee by the Act of April 6th 1830, would prove but an empty boon, if by the *laches* of the mortgagor, a new lien could afterwards be created, itself having precedence to the mortgage, yet causing its hold upon the land to be unloosed, whenever a sheriff's sale should be effected under a judgment subsequently obtained.

Colladay's mortgages were given when there were no arrears of ground-rent, and were therefore fixed by the positive provisions of the Act of Assembly. No process upon a judgment subsequently obtained could discharge their grasp upon the land, unless that judgment were obtained to enforce payment of the earlier lien of ground-rent. Having thus been fast and undisturbed by the sale, the fund in court was the purchase-money of what remained in the debtor unencumbered after the mortgages were given, and was applicable exclusively to the discharge of junior liens. The arrears of ground-rent were not a junior lien, as has been seen, though they accrued after the date of the mortgages.

It is hardly necessary to observe that no importance is to be attached to the declaration which the sheriff chose to incorporate into the conditions of sale. The sale was that of the law, not of the sheriff, and he was a mere agent for effecting it. The law had prescribed what disposition should be made of the proceeds; and it was not in his power to change it. The rights of the lien creditors junior to the mortgages were vested rights, and the sheriff could not divest them, either in whole or in part. The law gave them the entire fund raised by the sale, and without their consent, no portion of it could be diverted to the payment of another class of creditors.

　　　　　　　　　　The judgment is affirmed.