## Miners' Trust Company Bank *versus* Roseberry.

1. Wren borrowed money at usurious interest and gave a bond for its payment, on which judgment was entered. He was afterwards adjudged a bankrupt, and his land sold by the assignee subject to the judgment. *Held*, that the purchaser could not have the judgment reduced by the amount of the usury.

2. The Act of May 28th 1858 (Usury), applies only to the parties to the transaction ; it being at the election of the borrower whether he will withhold the excess or recover it back within the time limited.

3. In the distribution of a fund judgment creditors may attack a judgment collaterally for fraud on them, but not because it is a fraud on the debtor.

4. A subsequent judgment creditor cannot set aside a judgment merely because it is erroneous.

5. Payment of usury is not necessarily fraudulent as to creditors.

6. Whenever the usurious contract is intended to defraud creditors, or when the circumstances of the debtor are known to be such, that it can be reasonably presumed that this will be the natural effect, creditors have the right to postpone the excess of interest.

7. The purchaser having bought subject to the judgment, is presumed to have paid as much as the amount of the judgment less than he would have done.

8. There was no privity of contract between the creditors and the purchaser and he cannot invoke their equities and claim under them for his exclusive benefit.

March 6th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Schuylkill county :* Of January Term 1875, No. 22.

The question in this case arose on the following facts:—

On the 10th of July 1871, the firm of James Wren & Co., composed of James Wren, John T. Noble and Matthew Rhoda, borrowed from the Miners' Trust Company Bank $12,750, payable in one year, and gave to the bank a bond, with warrant of attorney, &c., to secure the payment of $15,000 in one year. Judgment was entered on the same day against Wren & Co. on that bond. On the 16th of October the firm was dissolved. On the 25th James Wren was adjudged a bankrupt, and his real estate was sold by his assignee in bankruptcy on the 23d of March 1872, to James M. Roseberry, Esq., as trustee for certain of Wren's creditors. Execution was issued on the judgment to September term 1873, and the real estate of Wren sold by his assignee, levied upon.

On the 6th of October 1873, Roseberry presented a petition to the Court of Common Pleas, setting out the foregoing facts, and averring that $2250 of the judgment was "without consideration, illegal and usurious," and praying that he might be let "into a defence for that part of the judgment which he alleged to be without consideration."

A rule was granted, and on its hearing the defendants in the judgment testified that the transaction as to the loan was a fair transaction, and that they did not claim any deduction on account of the excessive interest.

The court stayed the execution, and directed an issue to determine :—

"1. What portion of the judgment of the Miners' Trust Company Bank against James Wren, John T. Noble and Matthew Rhoda was founded on a usurious consideration.

"2. How much was due on said judgment.

"As the facts were not in dispute, and were all in evidence before the court, the counsel for the plaintiff thought a trial unnecessary, and before the filing of the order directing an issue, requested that it be dispensed with, and denied as a matter of law the right of Mr. Roseberry, or of those whom he represented, or of any one but the borrower himself to raise the defence of usury."

On the 13th of July 1874, the court, Pershing, P. J., directed

[Miners' Trust Company Bank *v.* Roseberry.]

that the fi. fa. on the judgment "be restricted to the collection of the sum of $12,750, with interest thereon and costs, so far as it is attempted to collect said judgment by levy and sale of the real estate sold by the assignee in bankruptcy of James Wren to John W. Roseberry."

The plaintiffs in the judgment took a writ of error, and assigned for error,

1. Deciding that the right to set up a defence of usury can be exercised by the purchaser of land bought subject to the lien of a judgment.

2. Deciding that a purchaser of land, subject to the lien of a judgment at the time of his purchase, may object to and resist the payment of that part of the judgment which is shown to be usurious.

3. Deciding that the defence of usury may be raised by others than the borrower himself.

4. Deciding that the interest of James Wren in the contract of borrowing the money by James Wren & Co. extended to the whole amount of the alleged usurious interest; that he alone had a right to deduct the whole amount thereof, which right became vested in John W. Roseberry, when in fact Wren was a partner to the extent of one-half thereof only; James Wren assigned the whole of his property to his assignee in bankruptcy, who legally represented the interest of his creditors as to the right of deduction, unless the prior agreement of dissolution vested the exclusive right in Noble and Rhoda.

5. In restricting the fi. fa. to the collection of the sum of $12,750 out of the real estate sold by the assignee in bankruptcy of James Wren to John W. Roseberry.

*F. W. Hughes* and *B. W. Cumming* (with whom were *J. W. Bickel* and *G. E. Farquhar*), for plaintiffs in error.—A purchaser of land sold by an assignee in bankruptcy cannot deduct any usury from a judgment subject to which the land was sold: Hauer's Appeal, 5 W. & S. 473. The Act of May 28th 1858, sect. 1, Pamph. L. 622, 1 Br. Purd. 803, pl. 1, confines the remedy to the borrower or debtor: Heath *v.* Page, 13 P. F. Smith 108. None but the borrower can avail himself of the defence of usury: Cole *v.* Savage, 10 Paige 583; Williams *v.* Tilt, 36 N. Y. 319. The purchaser having purchased subject to the judgment, that is part of the purchase-money, he is therefore bound to pay it: Hartley *v.* Harrison, 24 N. Y. 171; Post *v.* Bank of Utica, 7 Hill 391.

*J. W. Ryon* (with whom was *J. W. Roseberry*), for defendant in error.—An usurious security is void both against the borrower and all claiming title under him to the property affected by the

usurious contract : Ord on Usury 131 ; Lloyd *v.* Scott, 4 Pet. 205 ; Cole *v.* Savage, 10 Paige 583 ; Jackson *v.* Dominick, 14 Johns. 435 ; Dix *v.* Van Wick, 2 Hill 522 ; Berdan *v.* Sedgwick, 44 N. Y. 626 ; Carrow *v.* Kelly, 59 Barb. 239 ; Cummings *v.* Evir, 2 Halst. Ch. 73 ; Fisher *v.* Kahlnan, 3 Phila. R. 213 ; Greene *v.* Tyler, 3 Wright 361 ; Bachdell's Appeal, 6 P. F. Smith 386 ; Hartman *v.* Danner, 24 Id. 36 ; Duquesne Bank's Appeal, Id. 438.

Mr. Justice MERCUR delivered the opinion of the court, May 8th 1876.

The Act of 28th May 1858 made a radical change in the consequences flowing from the receipt of more than six per cent. interest per annum. It repealed all former laws imposing a penalty. The first section still makes six per cent. the lawful rate of interest. The second section recognises the actual business wants, habits and customs of the people. It assumes a greater rate may be charged and paid. It therefore declares, that if it shall be reserved or contracted for, the debtor shall not be required to pay the excess. At his option he may retain and deduct it from the amount of his debt, or if he has voluntarily paid the whole debt and an excess of interest, he may recover such excess by action instituted not more than six months after the payment. No longer can a stranger to the transaction, by a *qui tam* action, make a forfeiture of the whole debt. The statute professes to deal only with the parties to the proceedings. The debtor may elect whether he will withhold the excess, or recover it back within the time limited. Failing to act in time he has no remedy. No public informer can interfere either before or after the payment. The defendants in the judgment in question testify that they have no cause of complaint and desire it to be paid according to its terms.

In the distribution of a fund, judgment-creditors may attack a judgment collaterally when it is a fraud on them, but not because it is a fraud on the debtor : Dougherty's Estate, 9 W. & S. 189 ; Lewis *v.* Rogers, 4 Harris 18 ; Thompson's Appeal, 7 P. F. Smith 175. But a subsequent judgment-creditor cannot set aside a prior judgment merely because it is erroneous : Hauer's Appeal, 5 W. & S. 473.

In Greene *v.* Taylor & Co., 2 Wright 361, it was held competent for a second mortgagee to question in a distribution the first mortgage on the ground of usury. In this case, however, the transactions were prior to 1858, and the lien of the second mortgage attached before judgment was confessed on the first mortgage. In Bachdell's Appeal, 6 P. F. Smith 386, without discussing the question, it was held that a judgment-creditor, on distribution, could question the validity of a prior usurious judgment, and reduce it accordingly. But in Verner *v.* Carson, 16 P. F. Smith 440, it

[Miners' Trust Company Bank *v.* Roseberry.]

was questioned and left undecided, whether any but the borrower or debtor can set up the defence of usury under the Act of May 28th 1858. In Good *v.* Grant, 26 P. F. Smith 52, it was held the payment of interest in excess of the legal rate is not necessarily fraudulent as to creditors. Whenever the usurious contract is intended to defraud creditors, or when the circumstances of the debtor are known to be such that it can reasonably be presumed that this will be the natural effect, the right of creditors to postpone the excess of interest must be conceded. We are aware that the New York authorities go much further in regard to usurious contracts than any cases we have cited. But they are predicated of their statute, which makes the contract void. It is radically different from our statute of 1858. We, therefore, are unwilling to give those authorities a controlling effect in the construction of our statute.

There is, however, another view of the case, which we think decisive. This is not a case of distribution. The defendant in error does not claim as a creditor. He claims as a purchaser at a sale made several months after the entry of the judgment. He bought with full notice of its existence. He knew that he bought subject to its encumbrance. Presumably, he paid a sum equal to the amount of the judgment, less than he would otherwise have done. He was not defrauded. He got just what he purchased. " When an interest is subsequently acquired by a third person, with his eyes open, he is not defrauded by what has been done before his time :" Hauer's Appeal, *supra.* If any persons were injured by this judgment, it was the creditors, not the purchaser. He is in no condition to invoke their equities and claim under them, for his exclusive benefit. There is no privity of contract between him and them. We think, therefore, the learned judge · erred in restricting the plaintiff to the collection of a part only of the judgment out of the real estate sold to the defendant by the assignee, and the order must be reversed. This makes it unnecessary to consider the fourth assignment. So far as the other assignments apply to this case they are substantially affirmed.

　　　　　Decree reversed and order vacated at the costs of the appellee.