672 A.2d 326

**NATIONAL PENN BANK F/K/A National Bank of Boyerstown**

v.

**Curtis J. SHAFFER and Nancy J. Shaffer, Husband and Wife, Jointly and Severally.**

**Appeal of Nancy SHAFFER, and Eugene H. Evans, Esquire, Junior Lienholder.**

**NATIONAL PENN BANK F/K/A National Bank of Boyerstown**

v.

**Curtis J. SHAFFER and Nancy J. Shaffer, Husband and Wife, Jointly and Severally.**

**Appeal of Curtis J. SHAFFER.**

Superior Court of Pennsylvania.

Argued Oct. 26, 1995.

Filed Feb. 22, 1996.

Albert P. Massey, Frazer, for Nancy Shaffer and Eugene Evans.

Anthony Morris, West Chester, for National Penn Bank.

Before McEWEN, SAYLOR and BROSKY, JJ.

BROSKY, Judge.

This is a consolidated appeal from the final order of the lower court which granted appellee's petition to set aside the sheriff's sale and ordered a resale of the property. For the reasons set forth below, we reverse and remand for further proceedings consistent with this opinion.

Before addressing the issues raised by the appellants, it is necessary to recount the pertinent facts of this case. Curtis and Nancy Shaffer were the owners of the dwelling and lot located at 102 Elmwood Drive, Downingtown, Pennsylvania.[1] This property was subject to a mortgage held by the Navy Federal Credit Union in the sum of $105,050.00. In August of 1988, the Shaffers obtained a $50,000 line of credit from appellee, National Penn Bank, formerly known as National Bank of Boyerstown (hereinafter "NPB"). This credit line was secured by a second mortgage on the Elmwood Drive property. In addition to the above mortgages, the property was subject to judgment and federal tax liens (hereinafter junior liens) in excess of $50,000.00.[2]

The Shaffers defaulted on the second mortgage owed to NPB. As a result, NPB instituted foreclosure proceedings. The Shaffers did not respond to or otherwise contest the foreclosure action. Consequently, default judgments were entered against the Shaffers in the sum of $55,652.63. A writ of execution was issued, following which a sheriff's sale of the Elmwood Drive property was held on January 20, 1995. The junior lienors and the Shaffers were all duly notified of the sale.

1. Curtis and Nancy Shaffer divorced in 1994.

2. Eugene Evans, Esq., had a judgment lien in the sum of $10,000.00. There were also two federal tax liens for $33,389.20 and $8,433.85 respectively. The junior liens thus total $51,823.05 ($10,000.00 + $33,389.20 + $8,433.85 = $51,823.05).

Acting through its attorneys, NPB participated in the bidding and acquired the property for the sum of $140,000.00.[3] After the sale, NPB's counsel was advised by the title insurance company, who was preparing the proposed schedule of distribution, that the property had been purchased subject to the first mortgage. NPB, represented by new counsel, filed a petition to set aside the sale because of its prior attorneys' mistake in calculating the bid. The Shaffers and the junior lienors all filed answers in opposition to the petition and requested that the court confirm the sale.

A hearing on the petition was held on March 13, 1995. The trial court subsequently granted NPB's petition and ordered a resale of the Elmwood Drive property. Appellants, Eugene Evans, Nancy Shaffer and Curtis Shaffer, timely appealed therefrom.[4] Appellants Evans and Nancy Shaffer present the following issues on appeal: (1) whether the trial court abused its discretion in setting aside the sale where there was evidence that a third-party would have purchased the property but for NPB's mistake; (2) whether the trial

**3.** In calculating the bidding price, NPB's counsel erroneously included the amount of the first mortgage therein, even though Pennsylvania law clearly provides that subject to certain exceptions which are not relevant here, a judicial or other sale of real estate shall not affect the lien of a mortgage thereon where, as here, the mortgage is or shall be prior to all other liens upon the same property. 42 Pa.C.S.A. § 8152(a).

**4.** The appeal filed by Nancy Shaffer and Eugene Evans is docketed at No. 01463 Philadelphia 1995; Curtis Shaffer's appeal is docketed at No. 01464 Philadelphia 1995. These appeals were subsequently consolidated for review. The United States has neither filed a separate appeal nor otherwise participated in the Shaffer–Evans appeals.

Jurisdiction over this matter is properly vested in this court since the trial court's order completely disposed of all of the parties' claims and, therefore, is a final order. *See* 42 Pa.C.S.A. § 742 (vesting exclusive jurisdiction over appeals from final orders in the Superior Court); Pa.R.A.P., Rule 341(a), 42 Pa.C.S.A. (permitting an appeal to be taken as of right from any final order of a lower court) and Pa.R.A.P., Rule 341(b)(1), 42 Pa.C.S.A. (defining a final order as one which disposes of all claims or parties). *See also First Federal Savings & Loan Association of Lancaster v. Swift,* 457 Pa. 206, 208–209 n. 3, 321 A.2d 895, 896 n. 3 (1974) (appeal from order setting aside judicial tax sale was properly before the Supreme Court which, in accordance with the law in effect at that time, had exclusive jurisdiction over appeals from final orders in equity actions or proceedings, unless jurisdiction was otherwise vested in the Commonwealth Court).

court abused its discretion by allowing expert testimony to be introduced regarding the fair market value of the property; and (3) whether the trial court abused its discretion in concluding that the Shaffers would reap an unconscionable benefit if the sale were not set aside. In addition to these issues, Mr. Shaffer contends in his appeal that the trial court abused its discretion in setting aside the sale on the following grounds: (a) by failing to follow existing precedent announced by the Pennsylvania Supreme Court in regard to the avoidance of a sale; and (b) by misapplying the law relating to mistake, as set forth in the Restatement (Second) of Contracts. To the extent that the above issues are interrelated, they will be addressed together.

■ "The decision to set aside a sheriff's sale is within the sound discretion of the trial court and the court's decision will not be reversed on appeal unless there is a clear abuse of such discretion." *S & T Bank By Dalessio v. Dalessio*, 429 Pa.Super. 282, 286, 632 A.2d 566, 568 (1993), *allocatur denied,* 538 Pa. 614, 645 A.2d 1318 (1994). *Accord, First Federal Savings Bank of Delaware v. CPM Energy Systems Corp.*, 422 Pa.Super. 308, 313, 619 A.2d 371, 373 (1993).

> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or [the judgment is] the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous.

*Paden v. Baker Concrete Construction, Inc.*, 540 Pa. 409, 412, 658 A.2d 341, 343 (1995). We further recognize "that a petition to set aside a sheriff's sale is based on equitable principles...." *First Federal Savings Bank of Delaware v. CPM Energy Systems Corp.*, 422 Pa.Super. at 313, 619 A.2d at 373. It is also well established that:

The burden of proving circumstances warranting the exercise of the court's equitable powers is on the applicant, and the application to set aside a sheriff's sale may be refused because of the insufficiency of proof to support the material allegations of the application, which are generally required to be established by clear evidence.

*Id.,* 422 Pa.Super. at 313–314, 619 A.2d at 373 (citations and quotation marks omitted). We will evaluate the decision of the trial court with these considerations in mind.

■ To correctly assess the propriety of the trial court's determination, it is first necessary to clarify the grounds on which relief was sought and the genesis of the parties' dispute. With regard to this issue, it is important to note that the parties did not contest the validity of the sale proceedings. Nor did they allege any deficiencies pertaining to the notice of the sale. The sale similarly was not challenged because of any gross inadequacy in price. Appellee instead sought to avoid the sale solely because its attorney mistakenly submitted a bid which exceeded the amount needed to protect appellee's interests. The question to be resolved then is whether appellee's mistake in paying too much, standing alone, constitutes a sufficient basis on which the sheriff's sale may be set aside.

There are only two decisions which appear to have considered this issue: *Cummings' Appeal,* 23 Pa. 509 (1854) and *First National Bank of Koppel v. Mount,* 132 Pa.Super. 518, 1 A.2d 547 (1938). Both cases involved a situation in which the purchasers paid too much for the property due to their mistakes. As a result, the appellate courts set aside the sales. *Cummings' Appeal,* 23 Pa. at 511–512; *First National Bank v. Mount,* 132 Pa.Super. at 523–524, 1 A.2d at 550. However, neither of these decisions can be deemed controlling instantly.

*Mount* involved a situation in which the purchaser's mistake was clearly induced by the conduct of the execution creditor's counsel. *Mount,* 132 Pa.Super. at 523–524, 1 A.2d at 550. Unlike the facts established in *Mount,* there is absolutely no evidence that appellants or their counsel took action to mislead or confuse appellee with respect to the calculation of its

bid. In fact, appellee did not seek to set aside the sale because of any misconduct committed by the debtors, the junior lienors or their respective counsel. Appellee instead explicitly acknowledged in its petition that the mistake was solely attributable to the negligence of its own counsel. *See* Appellee's Petition to Set Aside Sheriff's Sale of Real Property Pursuant to Pa.R.C.P. 3132 and to Order Resale, filed 2/16/95, at paragraphs 7 and 13–14. *Mount* is therefore distinguishable from the facts presented here.

We reach a similar conclusion regarding *Cummings' Appeal*. In *Cummings*, the Supreme Court's decision was primarily influenced by the fact that the law had been in a state of flux, thus causing unwary and unsophisticated purchasers to be uncertain as to the effect of the sale on mortgage liens. *Cummings*, 23 Pa. at 512, 513–514. The court was also inclined to grant relief to the purchaser on equitable grounds. *Id.*, 23 Pa. at 511–512. Moreover, the majority relied upon *dicta* in support of its decision and, as pointed out in the concurrence, ignored controlling precedent. *Id.*, 23 Pa. at 511–512.

Since *Cummings* was decided, the law governing this area has become well-settled; our statutory law now clearly and unambiguously provides that, subject to certain exceptions, a judicial or other sale of real estate shall not affect the lien of a mortgage thereon where it is or shall be prior to all other liens upon the same property. 42 Pa.C.S.A. § 8152(a). Further, the purchaser in this case was an experienced financial lender who was well aware of the risks inherent in judicial sales and entrusted this matter to legal counsel. The difficulties and expense of ascertaining the state of a title which existed at the time of *Cummings* likewise have been substantially reduced by the advent of advanced information technology. Equitable considerations therefore no longer favor the protection of purchasers to the extent necessary in the mid-nineteenth century. We thus do not believe that *Cummings* should be blindly applied in this instance, especially in light of more recent appellate authority.

The appellate courts have held that the purchaser takes all of the risk at a sheriff's sale and that the rule of *caveat emptor* applies with full force. *Taylor v. Bailey,* 323 Pa. 278, 284, 185 A. 699, 702 (1936); *CSS Corporation v. Sheriff of Chester County,* 352 Pa.Super. 256, 259, 507 A.2d 870, 872 (1986), *allocatur denied,* 514 Pa. 627, 630, 522 A.2d 556, 559 (1987).

Bidders, therefore, must look out and take care of themselves. It is their business to examine beforehand, and after having made themselves acquainted with the facts and circumstances in relation to encumbrances, if any exist, then to decide for themselves as to what will be the legal effect and operation of the sale upon them.

*Taylor v. Bailey, supra* (citation and quotation marks omitted). The Supreme Court has additionally noted that relief will not be awarded for a mistake where, *inter alia,* a contract has been fairly made with full knowledge of the facts, even though a party thereto may have been under a misapprehension concerning its legal effect, where the parties cannot be restored to their original position or where there is a mistake of law, pure and simple, without any circumstances or equitable considerations which would move a chancellor to grant relief. *First National Bank of Sunbury v. Rockefeller,* 333 Pa. 553, 559, 5 A.2d 205, 207 (1939).

As applied here, appellee's mistake was a pure mistake of law, in that their counsel erroneously concluded that the sale had the legal effect of discharging the first mortgage. Other than this mistake, appellee had full knowledge of the pertinent information and, in fact, had specifically directed its counsel to only bid the amount necessary to cover its own debt and costs. N.T. 3/13/95 at 22.

It also is not possible to return the parties' to the position which they held at the time of the sale. The parties stipulated and admitted in their petition and answers that at the time of the first sale, the last of the other bidders offered a bid of $135,000.00. *See* N.T. 3/13/95 at 7, 18–19; Appellee's Petition to Set Aside Sheriff's Sale of Real Property Pursuant to Pa.R.C.P. 3132 and to Order Resale, filed 2/16/95, at paragraph 9; Evans' and Nancy Shaffer's Answers to Petition to

Set Aside Sale, filed 2/27/95 at paragraph 9; Curtis Shaffer's Answer to Petition to Set Aside Sale, filed 2/27/95 at paragraphs 1–11; United States' Answer to Petition to Set Aside Sheriff's Sale, filed 3/13/95 at paragraphs 1–11. It is evident that, but for appellee's mistake, the property would have been purchased by this bidder.

Unfortunately, the identity of this bidder is unknown. It would therefore be inappropriate to speculate as to whether this individual would make any bid at a subsequent sale, let alone offer such a high purchase price. There is also no reason to believe that an equivalent bid could be obtained at a subsequent sale. The parties thus cannot be placed into the same position that they occupied at the time of the sale with regard to the anonymous next-highest bidder.

We likewise discern no equitable considerations which support the grant of relief. Although appellee claims that it is unconscionable to permit the sale to stand, we are not persuaded by this bald contention. Appellee was a sophisticated financial lender who was obviously aware of the ramifications associated with the judicial sale as well as the existence of the first mortgage. Appellee did not attend the sale but instead engaged the services of counsel who calculated and entered the bid on appellee's behalf. Notwithstanding appellee's directives to the contrary, counsel misinterpreted Pennsylvania law which in turn caused him to submit a bid in excess of the client's wishes. Under these circumstances, it is appellee, rather than the opposing parties, who should rightfully bear the risk of the error committed by counsel. Moreover, the other parties have not been unjustly enriched due to the mistake. Were it not for appellee's erroneous bid, the property would have been sold to the next highest bidder. The bid submitted by appellee exceeded the next highest bid by only a few thousand dollars. Appellants' retention of this amount simply is not unjust.

We further note that the courts have refused to award relief solely because of a party's unilateral mistake of law or fact. *See, e.g., First Federal Savings & Loan Association of Lancaster v. Swift,* 457 Pa. 206, 213, 215, 321 A.2d 895, 898, 900

(1974) (wherein a majority of the participating justices agreed that courts of equity will not relieve a party from the consequences of an error due to his own ignorance or carelessness when there were available means which would have enabled him to avoid the mistake if reasonable care had been exercised; bank's mistaken reliance regarding the date of the tax sale thus did not entitle it to relief); *Westmoreland Guarantee Building & Loan Association v. Nesbit*, 21 Pa.Super. 150, 153 (1902) (refusing to set aside a properly conducted sheriff's sale, despite the gross inadequacy of the price and evidence that a higher bid could have been obtained, where the creditor was not deceived or misled by any other person and sought relief exclusively because of his own personal negligence in failing to attend the sale). *See also Smith v. Thomas Jefferson University Hospital*, 424 Pa.Super. 41, 45–46, 621 A.2d 1030, 1032 (1993), *allocatur denied*, 535 Pa. 638, 631 A.2d 1009 (1993) (unilateral mistake affords no basis for relief where the mistake is not due to the fault of the party not mistaken, but to the negligence of the one who acted under the mistake; mistaken party was therefore not entitled to rescind contractual release).

In light of the above reasoning, we conclude that the sale should not have been set aside in this instance.[5] We accordingly reverse the order of the trial court and remand for distribution of the proceeds obtained as a result of the sheriff's sale.

Order reversed. Remanded for further proceedings. Jurisdiction relinquished.

---

5. Our disposition renders it unnecessary for us to consider whether the trial court erred in allowing testimony as to the fair market value of the property to be admitted at the hearing.